UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
SOPHIA RIVERA,                                :
                                              :
                    Plaintiff,       :  **MEMORANDUM AND ORDER**
                                              :  06-CV-3326 (DLI) (CLP)
            -against-                       :
                                              :
MICHAEL J. ASTRUE,[1]                         :
Commissioner of Social Security,              :
                                              :
                    Defendant.       :
------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

      Plaintiff Sophia Rivera filed an application for supplemental security income ("SSI") benefits under the Social Security Act (the "Act") on August 27, 2003. Plaintiff's application was denied initially and on reconsideration. Plaintiff, who was unrepresented at the time of her hearing, testified before an Administrative Law Judge ("ALJ") on August 25, 2005. By a decision dated November 4, 2005, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. On May 26, 2006, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review. Plaintiff filed the instant action seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). The Commissioner now moves for judgment on the pleadings, pursuant to Rule 12 of the Federal Rules of Civil Procedure, seeking affirmation of the denial of benefits on the grounds that his decision is supported by substantial evidence and is free of legal error.

---

      [1]      Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michael J. Astrue shall be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this action.

1

(Gov't Mem. at 1.) Plaintiff cross-moved for judgment on the pleadings, seeking reversal of the Commissioner's decision, or alternatively, remand. In the case of remand, plaintiff requests the claim be reassigned to a new ALJ. (Pl. Mem. at 25.) Plaintiff contends that the Commissioner failed to properly evaluate the medical evidence and that the ALJ ignored important vocational considerations. (Pl. Mem. at 17-25.) For the reasons set forth more fully below, the Commissioner's motion and plaintiff's cross-motion for judgment on the pleadings are denied. The court grants plaintiff's alternative request and remands this case before a different for further proceedings consistent with this opinion.

## BACKGROUND

### A. Nonmedical and Testimonial Evidence

Plaintiff was born in 1954 and attended school in Puerto Rico through the fifth grade. (Tr. 581.) She learned English after immigrating to the United States in 1980; however, the extent of her proficiency is unclear. (Tr. 21, 45, 59-69, 89-102, 573, 609-610.) Plaintiff appears to have no relevant work experience. (Tr. 26, 70, 78, 81-88, 581.) Plaintiff appeared and testified without representation at a hearing before an ALJ on August 25, 2005. (Tr. 570-621.) She indicated difficulty with oral communication, focusing, finishing activities, and remembering things. (Tr. 95-96.) She explained that she had difficulties walking, breathing, and sitting. (Tr. 600-01, 604-05.) She denied use of drugs or alcohol. (Tr. 602.) She also stated that she hears voices calling her and sounds of knocking. (Tr. 606.) Plaintiff asserted that she cannot work because of back pain, bronchitis, asthma, anxiety, Hepatitis C, vomiting, insomnia, depression, and forgetfulness. (Tr. 581, 593.)

**B. Medical Evidence**

From March 1998 to February 2005, plaintiff received treatment for a variety of health conditions. In March 1998, plaintiff visited the New York Presbyterian Hospital ("NYPH") for asthma and pain due to varicose veins in her lower extremities. (Tr. 325.) She was advised to return for sclerotherapy treatments. (*Id.*) She continued periodic treatment for this condition and, ultimately, was diagnosed with varicose veins. (Tr. 332-46.) Plaintiff returned to NYPH with new symptoms in July 1999. She complained of asthma and back pain radiating to her shoulders when walking, standing, and cleaning. (Tr. 337.) Dr. Afua Yeboaa Forson advised her to abstain from lifting and twisting. (*Id.*) In November 2000, she was diagnosed with claudication of the lower extremities and varicose veins. (Tr. 425.)

In August 2002, plaintiff returned to NYPH for hot flashes, nervousness, and weight loss. (Tr. 397.) She was referred to a social worker and given medicine for blood pressure. (*Id.*) Later that month, Dr. Stevan A. Gonzales evaluated her, diagnosing her with hypertension, asthma, insomnia, and depression. (Tr. 428-29.) In October 2002, plaintiff tested positive for Hepatitis B and C. (Tr. 433.) In March 2003, Dr. Amret Thompson evaluated plaintiff and diagnosed her with moderate persistent asthma. (Tr. 440.) In September 2003, Dr. Wenderoth examined plaintiff and diagnosed her with vertigo related to an eardrum injury. (*Id.*)

Dr. Marta Rivera, another treating physician, evaluated plaintiff in September 2003. (Tr. 450-52.) Plaintiff complained of dizziness, vertigo, asthma, depression, Gastroesophageal Reflux Disease ("GERD"), and leg pain. (*Id.*) Dr. Rivera indicated that plaintiff had "real medical problems;" however, those problems did not rise to the level of a disability. (Tr. 452.)

Dr. Rivera noted that plaintiff's asthma and GERD could be managed with medication, but that her leg pain merited further evaluation and could potentially qualify her as disabled. (*Id.*)

In February 2004, plaintiff returned to NYPH complaining of dypnea and wheezing. (Tr. 460.) Dr. Ioannis Oikonomou noted poor air movement, mild expiratory wheezing, and increased her asthma medication. (*Id.*) Dr. Oikonomou also recommended liver function, viral load, and Hepatitis panel tests. (*Id.*) On February 17, 2004, Dr. Oikonomou noted that plaintiff was under his care for poorly controlled, moderate, persistent asthma, depression with psychosis, and GERD. (Tr. 464.) She continued periodic treatment in 2004 for these conditions, during which, plaintiff's Hepatitis C resolved itself. (Tr. 472, 478, 483.)

In February 2005, a bone mineral density scan of plaintiff's spine and femur revealed abnormal bone mineral density compatible with osteopenia of the lumbar spine. (Tr. 529.) She continued periodic treatment in 2005, during which several doctors advised her of the importance of quitting smoking. (Tr. 504-05, 511.) She quit for a few months. (Tr. 505.)

**C. Psychiatric Evidence**

Plaintiff first sought treatment for her psychiatric problems in August 1999, at the Western Queens Consultation Center ("WQCC"). (Tr. 256.) Dr. Ivan Subervi diagnosed plaintiff with Major Depressive Disorder, Dysthimic Disorder, and Generalized Anxiety Disorder. (*Id.*) On September 2, 1999, Dr. Subervi prepared an Initial Treatment Plan with plaintiff, recommending weekly visits as her condition was severe and enduring. (Tr. 251.)

Plaintiff began regularly attending therapy sessions in January 2000. (Tr. 201-04, 207.) She attended therapy once a week with psychiatric evaluations conducted several times annually.

Her various diagnoses over the years included Major Depressive Disorder, Dysthymic Disorder, and General Anxiety Disorder. (Tr. 201.) During this period, plaintiff's GAF[2] score fluctuated between 45 and 60; 55 was the most frequently reported score. (Tr. 201-549.) In February 2000, Dr. Subervi indicated that plaintiff needed to improve her depressed mood, anxiety, and asthma as well as reduce her preoccupation with environmental difficulties. (Tr. 259-60.) One of plaintiff's goals established in this session was to start working part-time or full-time. (Tr. 260.) The severity of plaintiff's condition was "moderate." (Tr. 259.) In May 2000, Dr. Subervi noted that plaintiff improved her depression and anxiety and wanted to start studying computer skills; however, Dr. Subervi also indicated that plaintiff needed to "reduce functional deficits which impede gainful employment." (Tr. 261.) Her capabilities remained the same in January 2001. (Tr. 265-66.)

In a treatment plan completed in June 2002, plaintiff was diagnosed with General Anxiety Disorder and Major Depressive Disorder. (Tr. 279.) In March 2003, it was again determined that plaintiff needed to reduce functional deficits. (Tr. 286.) On April 3, 2003, an unnamed WQCC psychotherapist, completed a certification letter indicating that plaintiff's severe depression and anxiety symptoms rendered her disabled. (Tr. 223.) On June 18, 2003,

---

[2] The GAF scale is used to report a patient's overall functioning. (Pl. Mem. at 3.) GAF scores between forty-one and fifty correspond to "serious symptoms" (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) and any "serious impairments" in social, occupational, or school functioning (e.g., no friends, failure to keep a job). *See* American Psychiatric Association, Diagnostic Statistical Manual of Mental Disorders 34 (4th ed. 2000). GAF scores between fifty-one and sixty indicate "some moderate symptoms" (e.g., flat affect and circumstantial speech, occasional panic attacks) and moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co- workers. (*Id.*)

Dr. Sherley Millet of WQCC evaluated plaintiff and noted that plaintiff needed to reduce functional deficits which impede gainful employment. (Tr. 287-288.) Dr. Millet indicated that plaintiff continued with the same limitations in February 2004. (Tr. 297-298.) In reviews of subsequent visits, plaintiff showed improvement with occasional regression, (Tr. 299-308, 556-59, 561.) In November 2005, Pamela Zambrana, who is identified as "psychotherapist staff," completed a narrative stating that continued treatment would allow plaintiff to "remain at baseline of low functioning." (Tr. 534.)

**D. Functional Capacity Assessments**

   **1. Treating Physicians**

Plaintiff presented no records addressing whether her physical impairments rendered her disabled. There are some records indicating that her psychiatric-related conditions impaired her. In October 2000, Dr. Subervi of WQCC, completed a functional capacity assessment at the request of the New York State Office of Temporary and Disability Assistance, Division of Disability Determinations. (Tr. 125-31.) He diagnosed plaintiff with dysthymic disorder and noted a depressed and constricted mood and affect, fair perception, appropriate speech, fair memory, fair insight and judgment, and poor ability to perform calculations. (Tr. 125-28.)

On December 30, 2005, after the ALJ denied plaintiff's SSI claim, Dr. Millet completed a Psychiatric Impairment Questionnaire, diagnosing plaintiff with Major Depressive Disorder and Generalized Anxiety Disorder, and indicating that her ability to work was markedly limited.[3]

---

[3] The questionnaire defines markedly limited as effectively precluding the individual from performing the activity in a meaningful manner. (Tr. 545.)

(Tr. 542-49.)  Dr. Millet also indicated that plaintiff was moderately limited[4] in her ability to interact with the general public, make work related decisions, request assistance, react to normal hazards, travel to unfamiliar places or use public transportation.  (Tr. 545-47.)  Dr. Millet noted that she could not function in work-like settings and that she was incapable of tolerating even low work stress.  (Tr. 547-48.)  Finally, her impairments and treatment would require her to miss work at least three times monthly.  (Tr. 549.)

### 2. Agency Physicians

In January 2000, Dr. Antonio De Leon evaluated plaintiff at Diagnostic Health Services, Inc. ("DHS") and noted bronchial asthma, back pain, and a history of depression, indicating a prognosis of "fair."  (Tr. 132-33.)  He remarked that plaintiff was capable of the following: sitting, no limitation; walking and standing, mildly limited; carrying and lifting, mildly limited. (*Id*.)  Dr. Joshua Algaze evaluated plaintiff in October 2000, finding that she suffered from moderate difficulties in personal, social, and occupational adjustment that impaired her ability to tolerate work pressures.  (Tr. 140-41.)

In October 2003, plaintiff returned to DHS for an evaluation with Dr. E.B. Balinberg in connection with her SSI application.  (Tr. 143-45.)  Dr. Balinberg diagnosed her with bronchial asthma, low back disorder, and arthritis of the knees.  (Tr. 143.)  He indicated that she had a limited ability to lift, carry, push, and pull heavy loads, and had a restricted ability to walk and climb stairs.  (Tr. 143-44.)  On the same day, Dr. Richard King conducted a

---

[4] The questionnaire defines moderately limited as significantly effecting but not totally precluding the individual's ability to perform the activity.  (Tr. 544.)

7

psychiatric examination, diagnosing her with adjustment disorder of adult life, anxiousness, and mild depression, giving a "fair" prognosis. (Tr. 149-50.)

Dr. J. Curly performed a Functional Capacity Assessment in December 2003. (Tr. 155-57.) He noted that plaintiff suffered from adjustment disorder, which was fairly well controlled. (Tr. 157.) In his opinion, plaintiff was not "Markedly Limited" in any capacity; rather, she was "Moderately Limited" in two ways, performing activities within a schedule, and responding appropriately to changes in a work setting. (Tr. 155-56.) He concluded that she was able to understand, carry out, and remember simple and detailed instructions and work-like procedures, to use judgment to make work-like decisions, to set goals and make plans independently, to maintain a normal workday, and to respond appropriately to supervisors and co-workers in a routine work setting. (Tr. 157.)

## DISCUSSION

### A. Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring actions in federal courts seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). District courts, reviewing final determinations of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with

the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982) (internal quotations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

District courts are empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). Remand is also appropriate when "there are gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).

**B. Disability Claims**

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial

9

burden of proof and must demonstrate disability status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether claimants are disabled under the Act, as set forth in 20 C.F.R. § 404.1520. If at any step, an ALJ finds that a claimant is either disabled or not disabled, the inquiry ends there. First, claimants are not disabled if they are working and performing "substantial gainful activity." 20 C.F.R. § 416.920. Second, ALJs consider whether claimants have severe impairments, without reference to age, education or work experience. To be considered disabled, claimants must have an impairment, or combination of impairments, that significantly limit their physical or mental ability to do basic work activities, satisfying the durational requirement in § 404.1509. *See* 20 C.F.R § 416.920(c). Third, ALJs will find claimants disabled if their impairments meet or equal one of the impairments listed in Appendix 1.[5] 20 C.F.R. § 416.920(d).

When claimants do not have listed impairments, ALJs then make findings as to their "residual functional capacity" in steps four and five. 20 C.F.R. § 416.920(e). In the fourth step, claimants are not found disabled if they are able to perform "past relevant work." 20 C.F.R. § 416.920(f). Finally, in the fifth step, ALJs determine whether claimants can adjust to other work that exists in the national economy, considering factors such as age, education, and

---

[5] 20 C.F.R. pt. 404, subpt. P, app. 1.

work experience. If so, claimants are not disabled. 20 C.F.R. § 416.920(g). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll*, 705 F.2d at 642).

## C. The ALJ's Decision

The ALJ resolved step one in plaintiff's favor, determining that plaintiff has not engaged in substantial gainful activity since filing her application. (Tr. 21.) Under step two, the ALJ determined that plaintiff's impairments—asthma, major depressive disorder, general anxiety disorder, and adjustment disorder of adult life—were "severe" based on the requirements of 20 C.F.R. § 416.920(c). (Tr. 27.) Under step three, the ALJ determined that plaintiff's impairments did not meet or medically equal one of the listed impairments in Appendix 1, noting that plaintiff's mental impairments satisfied the "A" criteria under Section 12.04, Appendix 1, Subpart P, Regulations No. 4, but not the requisite "B" or "C" criteria. (Tr. 24, 28.) In steps four and five the ALJ determined that plaintiff retained the residual functional capacity to perform simple, repetitive, not fast-paced work of light exertion. (Tr. 25.) Under step four, the ALJ noted that the record established that plaintiff had no past relevant work experience. (Tr. 26.) Under step five, the ALJ requested testimony from a Vocational Expert ("VE") to determine whether there were other jobs in the national economy plaintiff could perform. The ALJ described to the VE a hypothetical woman of plaintiff's age, work history, RFC, and education. (Tr. 610.) The VE testified that such a woman could work as a cashier, counter attendant, security guard, assembler, or machine tender or marker. (Tr. 611-14.) The VE also testified that such jobs are abundant in the local and national economy. (Tr. 614.) The ALJ

concluded that plaintiff was capable of performing simple, repetitive, non-fast-paced work, widely available in the local and national economy. (Tr. 17-28.) Upon the ALJ's denial of benefits, Plaintiff retained representation and appealed her decision, submitting new evidence for consideration. The Appeals Council denied review of her appeal on May 26, 2006. Plaintiff then filed the instant action.

**D. Application**

The Commissioner seeks judgment on the pleadings, contending that his decision is supported by substantial evidence and correctly applies the relevant law. (Gov't Mem. at 1.) Plaintiff opposes the instant motion and cross-moves for judgment on the pleadings, seeking reversal of the Commissioner's decision, or alternatively, remand. Plaintiff contends that the Commissioner failed to properly notify plaintiff of her right to counsel, to properly develop the record, to weigh the medical source opinions, and to consider new and material evidence. (Pl. Mem. at 17-23.) Plaintiff also claims that that the ALJ ignored important vocational considerations. (*Id*. at 24.)

    **1. Notice of Right to Counsel**

It is well settled that a "claimant is entitled to be represented by counsel at the hearing and the ALJ must ensure that the claimant is aware of this right." *Robinson v. Sec. of Health & Human Servs.*, 733 F.2d 255, 257 (2d Cir. 1984); *Frank v. Chater*, 924 F. Supp. 416, 423 (E.D.N.Y. 1996). Adequate notification includes: "(1) an explanation of the benefits of having an attorney to aid in the proceedings; (2) notification of the possibility of seeking free counsel or a contingency arrangement; and (3) notification regarding the statutory twenty-five percent

withholding limitation on attorneys' fees as well as the fee approval process generally." *Frank*, 924 F. Supp. at 423. Further, "[o]nce a claimant is provided with adequate notification, she may effectively waive the option to proceed with counsel either in writing or on the record before the ALJ." *Id*. To ensure a full and fair hearing, the ALJ must ensure that the claimant knowingly and intelligently waived her right to counsel. *See Vaughn v. Apfel*, 98-CV-0025 (HB), 1998 WL 856106, *4 (S.D.N.Y. Dec. 10, 1998).

Plaintiff received written notification of the right to counsel in a letter she received prior to the hearing, informing her:

> You may choose to be represented by a lawyer or other person. A representative can help you get evidence, prepare for the hearing, and present your case at the hearing.

(Tr. 42-43.) This notification was insufficient under the standard set forth in *Frank*. *See Frank*, 924 F. Supp. at 426-427. The ALJ provided notification at the outset of the hearing; however it, too, failed to meet the *Frank* standard. (Tr. 574.) Moreover, an ALJ should adjourn a hearing when "it is clear that the claimant is not only desirous of obtaining counsel but has also taken significant and meaningful steps toward that goal." *Frank*, 924 F. Supp. at 427 (finding that the ALJ should have adjourned when plaintiff stated he desired counsel and had an appointment later the same day with a legal services organization). Plaintiff stated that she had acquired representation (Tr. 575); thus, the ALJ should have adjourned the hearing.

Finally, it is unclear whether plaintiff understood the ALJ's notice:

> ALJ: You learned to speak English here? Okay. So I'm going to explain to you that you have a right to have a legal representative. . . . A legal representative could assist you in obtaining medical records . . . Do you understand?
> CLMT: Yes.

> ALJ: Okay. Now a legal representative is not required, and we can proceed here today without a legal representative. Do you wish to proceed here today without a legal representative?
> CLMT: Yes because she – somebody passed away.
> ALJ: No, no. Wait a minute. If you wanted to have one adjournment for the purpose of discussing your case with a legal representative, I would grant you that one final judgment.
> INT: I understand that.
> ALJ: Do you understand what I am saying?
> CLMT: No. Not what you just said.

(Tr. 574-75.) The ALJ never verified that plaintiff understood the benefits of counsel. (Tr. 575.) Further, while an interpreter was present, it is unclear whether the interpreter assisted plaintiff during the entire exchange. Notably, the interpreter fell asleep during the hearing and was dismissed by the ALJ. (Tr. 601.) Under these circumstances, the court cannot find that plaintiff received adequate notice of her right to counsel.

### 2. Development of the Record

An "ALJ, unlike a judge in a trial, must himself affirmatively develop the record." *Echevarria v. Sec. of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (citations omitted). When a claimant appears at a hearing *pro se*, ALJs are under a heightened duty "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980). With respect to treating physicians, ALJs must seek additional evidence or clarification when a report "contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R § 404.1512(d); *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).

14

Plaintiff contends that the ALJ failed to affirmatively develop the record. (Pl. Mem. at 18.) After the hearing, the ALJ received documentation from the WQCC for appointments from February 9, 2000 through May 4, 2005. These records repeatedly indicate that plaintiff "need[ed] to reduce functional deficits which impede gainful employment." (Tr. 262-308.) One of plaintiff's treating psychotherapists indicated that plaintiff was "unable to work because of her severe depression and anxiety symptoms." (Tr. 223.) The ALJ's decision regarding plaintiff's mental impairments is based heavily on the assessment by Dr. Curley, a non-treating examiner. (Tr. 24, 155-58.) The ALJ should have pursued the disparity between Dr. Curley's opinion and that of the treating psychiatrists. *See Sanchez v. Barnhart*, 329 F. Supp. 2d 445, 451 (S.D.N.Y. 2004) (remanding where the ALJ failed to make "every reasonable effort" to obtain further records to reconcile the differing diagnoses of the treating and agency physicians). At a minimum, the ALJ should have inquired further with treating psychiatrists and therapists at the WQCC. *See Johnson v. Barnhart*, 02-CV-1704 (NGG), 2004 WL 725309, *4 (E.D.N.Y. Mar. 8, 2004) (remanding where the ALJ failed to obtain more detailed descriptions of plaintiff's mental limitations from a treating psychiatrist or psychologist). The ALJ failed to adequately discharge her heightened duty to this *pro se* litigant.

### 3. Treating Physician Rule

A treating physician's medical opinion regarding the nature and severity of an impairment is to be given controlling weight when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *See Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993) (citing 20

C.F.R. § 404.1527(d)). When a treating source's opinion is not given controlling weight, the proper weight accorded depends upon several factors, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. § 404.1527(d)). Additionally, ALJs must "give good reasons" as to any decreased weight accorded a treating source's medical opinion. *Id*. There are, however, certain decisions reserved to the Commissioner. Such decisions include the determination that a claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(e)(1). Thus, the administration considers the data that physicians provide, "but draws its own conclusions as to whether those data indicate disability." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). "A treating physician's statement that the claimant is disabled cannot itself be determinative." *Id*.

Plaintiff contends that the ALJ improperly weighed the medical source opinions. (Pl. Mem. at 20.) The ALJ relied heavily on the opinions of two non-treating examiners, Drs. Curley and King. (Tr. 23-25.) Based on their findings, the ALJ determined that plaintiff's mental impairments did not meet or equal a listed impairment. Plaintiff failed to provide a psychiatric RFC assessment from a treating physician at the time of the hearing; however, the record is replete with treating source assessments indicating plaintiff's need to reduce functional deficits that impede gainful employment. (Tr. 201-308, 556-65.) In fact, one of plaintiff's psychotherapists opined that she was unable to work due to her "severe depression and anxiety symptoms." (Tr. 223.) The ALJ accorded less weight to the assessments of plaintiff's treating

16

physicians and despite acknowledging receipt of records from the WQCC post-hearing, she failed to offer an explanation as to why the treating physicians' opinions were afforded decreased weight.[6] (Tr. 22-24.) The ALJ should have considered that Drs. Curley and King only saw the plaintiff once, whereas plaintiff's treating sources at WQCC saw her weekly from October 2000 through December 2005. (Tr. 213, 534, 549.) In contemplating plaintiff's disability, if the ALJ had given more weight to the treating sources, she at least would have found it necessary to seek further information from the WQCC.[7] *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 282 (E.D.N.Y 2005) (remanding as the ALJ failed to accord proper weight to treating source opinion because he found them inconsistent with a state agency doctor's report).

**4. Consideration of New Evidence**

Under the Act, a claimant may "submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision." *Perez*, 77 F.3d at 44 (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)). "If the new evidence relates to a period before the ALJ's decision, the Appeals Council 'shall evaluate the entire record including the new and material evidence submitted . . . [and] then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Id*. To

---

[6] The ALJ noted only that Dr. Curly's assessment is "consistent with the total record and is therefore, given significant weight," and that the WQCC records "show improvement." (Tr. 24-25.) The ALJ also noted separately that plaintiff's subjective testimony regarding functional capacity was sometimes inconsistent. (Tr. 24.)

[7] All narratives supplied by treating sources at the WQCC offer further information upon request and supply a phone number and address. As already noted, further inquiry with the WQCC could have revealed an assessment such as Dr. Millet's mental RFC assessment. (Tr. 542-549.)

obtain a review of such evidence, the claimant must show that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." *Sergenton v. Barnhart*, 470 F. Supp. 2d 194, 204 (E.D.N.Y. 2007) (citing *Lisa v. Sec'y of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991)). Materiality means "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." *Id*.

Plaintiff contends that the Appeals Council failed to adequately evaluate new evidence she submitted subsequent to the hearing. (Pl. Mem. at 22.) Plaintiff submitted two records obtained after the hearing, which contradicted the ALJ's finding of "moderate restrictions in activities of daily living." (Tr. 24.) First, plaintiff submitted a narrative from Dr. Zambrana, noting that "[c]ontinued treatment allows [plaintiff] to remain at baseline of low functioning second to chronicity of psychiatric symptoms and occasional exacerbations due to psychological and environmental stressors plus chronic curse of mental illness." (Tr. 534.) The second report, Dr. Millet's mental RFC assessment, is of greater significance. It indicated that plaintiff was of "Markedly Limited ability." (Tr. 545-547.) This evaluation sheds new light on the severity of plaintiff's mental illness and, therefore, is sufficient to require a remand for reconsideration. *Lisa*, 940 F.2d at 43-46 (remanding to the Secretary when new diagnostic evidence would present a reasonable possibility of influencing the Secretary to decide her application differently); *see also Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir. 1985) (finding new evidence of the seriousness of claimant's condition material).

## CONCLUSION

For the reasons set forth above, defendant's and plaintiff's motions for judgment on the pleadings are denied. However, the case is remanded for further proceedings consistent with this opinion. The court grants plaintiff's request to remand this case to another ALJ. The totality of the circumstances of the proceedings before the ALJ raises concerns of fundamental fairness. In particular, the court is disturbed by the ALJ's failure to: (i) properly apprise plaintiff of her right to counsel, (ii) determine whether she understood what was being said and to insure that the interpreter was properly assisting plaintiff instead of sleeping during the proceedings, (iii) properly consider the opinions of the treating physicians, and (iv) develop the record. *See Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 292-93 (E.D.N.Y. 2004) (remanding to a different ALJ as conduct of the ALJ gave rise to serious concerns about the fundamental fairness of the disability review process). The Commissioner shall take all steps necessary to prevent any delay in the processing of Plaintiff's case and in conducting further proceedings before the ALJ. *See Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004).

SO ORDERED

DATED: Brooklyn, New York
March 16, 2009

_____/s/_____
DORA L. IRIZARRY
United States District Judge